## Benedict v. Benedict.

(Decided June 16, 1915.)

## Appeal from Jefferson Circuit Court (Chancery Division, No. 1).

1. Divorce—Alimony—Appeal—Effect.—While this court has no revisory power over the judgment of divorce, we may review the facts of the case for the purpose of determining the propriety of the chancellor's action in awarding alimony.

2. Divorce—Alimony—Sufficiency of Evidence.—In an action for divorce and alimony, evidence examined and held that the divorce was improperly granted and the alimony improperly allowed.

GIBSON & CRAWFORD for appellant.

J. T. A. BAKER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, Florence E. Benedict, brought this action against her husband, William A. Benedict, for divorce and alimony. The chancellor granted her a divorce and awarded her alimony in the sum of $35.00 per month. The defendant appeals.

While this court has no revisory power over the judgment of divorce, we may review the facts of the case for the purpose of determining the propriety of the chancellor's action in awarding alimony. Griffin v. Griffin, 154 Ky., 766, 159 S. W., 597; Beal v. Beal, 80 Ky., 675; Evans v. Evans, 93 Ky., 510; Sebastian v. Rose, 135 Ky., 197; Patrick v. Patrick, 30 Ky. Law Rep., 1364, 101 S. W., 328; Civil Code, Sec. 427.

The facts are as follows: Plaintiff and defendant were married November 14th, 1911. At that time defendant was an assistant engineer in the employ of the city of Louisville and earned a salary of $100 per month. Immediately after their marriage plaintiff and defendant went to live with the bride's parents and paid board at the rate of $35 per month. Defendant was afraid that plaintiff would not marry him if she knew he was not saving anything or was in debt. Before the marriage he represented to her that he had saved $200 and had borrowed $100 and had loaned the $300 at eight per cent. interest. During the first five or six months

of their married life defendant turned over his entire salary. During this period plaintiff was happy and managed to save about $100. This was turned over to defendant to be used in paying back the alleged loan of $100. It subsequently developed that defendant, instead of having any capital, was in debt at the time of the marriage. After the marriage he began playing the races in an effort to get out of debt and get in the good graces of his wife. In this way he lost a few hundred dollars and was seven or eight hundred dollars in debt. With affairs in this condition, he told his wife that it was necessary for him to go into bankruptcy in order to save his position. This he did in June, 1912. In addition to his listed debts, he owed a few other debts, among which was a debt of $160 due Dr. Schott, upon which plaintiff's father was surety. During the next few months his financial affairs were in a bad state. He incurred some expenses in connection with the bankruptcy proceedings, and, in order to keep his head above water, was borrowing from one person to pay another. During this time he failed to pay his board bill, which ran up to about $150. About this time, plaintiff compelled defendant to leave. Later on, he promised to do better, and returned to his wife under an agreement by which his wife was to receive $60 per month, and an attorney was to receive $40 per month to be applied on his debts. For four months following this arrangement defendant turned his salary over to his wife, which was divided on the basis of the above agreement between her and the attorney. Her statement of what occurred in the month of March, 1913, is as follows:

"I found out when it came time to draw the next month's salary (i. e., the February salary), he kept putting me off about taking me up there with him. I knew the other salaries had been paid, and I knew he was deceiving me—that the salary had been drawn. I saw then that it was no use for me to try any more; that he utterly disregarded my feelings; that he knew this humiliated me and made me sick to think he was making as much money as he was and was drawing the salary and was not paying the debts he said he would."

Defendant says that in order to get the money early in the month, and before the city payrolls were passed, he had made arrangements with the loan firm of L. Simons & Company. About the first of March, 1913,

that firm went out of business. It was, therefore, no longer possible for him to secure the money in that way. He claims that he told his wife that if she would wait a day or two he would arrange the matter satisfactorily. Plaintiff says that he made. four engagements with her to go after the salary, but failed to keep them. On March 9th, 1914, plaintiff told the defendant to leave. The record further shows that plaintiff was very much hurt by the fact that defendant took the bankrupt law. On being asked what was the cruel and inhuman treatment to which she was subjected, plaintiff said:

"It is simply that he utterly disregarded my feelings about paying the debts and about making new debts continually."

The evidence further shows that during their entire married life defendant was patient, kind and attentive to his wife, and never left her, except on two occasions, when he did so with her consent. It further appears that after plaintiff compelled defendant to leave, he made overtures for a reconciliation and tried to get his pastor and friends to intercede with plaintiff in his behalf. These overtures on defendant's part were rejected by plaintiff, who says that she had made up her mind that she did not care to live with a person who was going to deceive her.

The statute authorizes the granting of a divorce to a wife for a confirmed habit of drunkenness on the part of the husband of not less than one year's duration, accompanied by a wasting of his estate and his failure to make suitable provision for the maintenance of his wife or children. Section 2117, Sub-section 1, Kentucky Statutes. Plaintiff's case was not predicated on, nor could it have been predicated on, this statute. While it may be that defendant, for a while, wasted his estate by gambling, it does not appear that he had a confirmed habit of drunkenness. On the contrary, he was always sober.

Indeed, the only ground relied on by plaintiff is the defendant's habitual behavior towards her, for not less than six months, in such a cruel and inhuman manner as to indicate a settled aversion to her or to destroy permanently her peace or happiness. Section 2117, Sub-section 2, Kentucky Statutes. It is insisted for plaintiff that the divorce was properly granted, because the defendant's conduct in gambling away his money, in fail-

ing to pay his debts, in incurring new debts and in failing to keep his promise to turn over his salary to his wife, constituted cruel and inhuman conduct within the meaning of the statute. It is true, of course, defendant committed a grievous fault in misrepresenting his financial condition to his wife. His conduct was likewise reprehensible in endeavoring to get out of debt by playing the races. It was, perhaps, both a fault and a misfortune that he had to take the bankrupt law. Shortly after these occurrences, plaintiff left him. Later on, she agreed to take him back on the condition that he would turn over $60 of his salary to her and $40 to an attorney to be used in paying his debts. Even if his prior misconduct had been such as to warrant the granting of a divorce to her, it would seem that it was condoned by her consenting to live with him under the circumstances. After this new agreement he continued to pay her his salary for four months. His salary for the fifth month he did not turn over to her. He says that he was unable to get it at that time. She says that he made four engagements with her to get it, but failed to keep them. His offense then consisted in failing to keep his agreement to turn over to her his salary for the month in question. After that defendant was never given another chance. He made overtures for a reconciliation, but they were rejected. A careful reading of the record shows that for about ten months during their married life of sixteen months plaintiff collected defendant's salary. During this time their relations were very agreeable and she was altogether happy. When, however, he failed to turn over his salary and failed to pay his debts, she became unhappy. It is clear that this is not a case where the defendant failed to provide for his wife and left her in want. He turned over to her $60 of his salary for four months preceding the time that she compelled defendant to leave. While it may have been a bitter disappointment to her that his salary for the fifth month was not turned over to her, it cannot be said that his conduct was such as permanently to destroy her peace or happiness. Though plaintiff's desire to have her husband pay his debts and refrain from incurring other debts is to be commended, the law does not contemplate the severance of the married relations for such shortcomings as the defendant exhibited. It requires more patience, more forbearance and more sympathy

than the plaintiff displayed in this case, and a more pronounced effort on her part to help the husband overcome his weakness. In our opinion, the evidence does not authorize a divorce. It follows that alimony was improperly allowed.

Judgment, in so far as it allows alimony, reversed and cause remanded, with directions to enter judgment in conformity with this opinion.